UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Associated Wholesale Grocers, Inc. v. Bumble Bee Foods, LLC et al.,* 18cv1014-JLS-MDD | Case No.: 3:15-MD-02670-JLS-MDD<br><br>**ORDER GRANTING AWG'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>(ECF No. 2412) |

Presently before the Court is Plaintiff Associated Wholesale Grocers, Inc.'s ("AWG") Motion to File a Third Amended Complaint. (ECF No. 2412). Defendant Christopher D. Lischewski ("Lischewski") filed an opposition (ECF Nos. 2403, 2404), and AWG replied (ECF No. 2409). The motion is decided on the briefs without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons which follow, the motion is granted.

### BACKGROUND

In July 2015, the United States Department of Justice ("DOJ") announced its investigation into the packaged tuna industry. Criminal charges were filed against the three largest domestic producers of packaged tuna products—Tri-Union Seafoods LLC d/b/a Chicken of the Sea International ("COSI"), Bumble Bee Foods LLC ("Bumble Bee"),

StarKist Company ("StarKist"), and their executives for violating federal antitrust laws. All defendants pled guilty or were convicted.

Numerous civil actions have been filed against the same defendants alleging conspiracy to fix and maintain packaged tuna prices above competitive levels in violation of state and federal antitrust laws. These civil actions were consolidated in a multidistrict litigation ("MDL") for pretrial proceedings before this Court. The Court divided the plaintiffs into four tracks: (1) Direct Action Plaintiffs, who are direct purchasers proceeding individually; (2) Direct Purchaser Plaintiffs, who are proceeding on behalf of a putative class; (3) Commercial Food Preparer Plaintiffs, who are indirect purchasers proceeding on behalf of a putative class; and (4) End Payer Plaintiffs, who are consumers proceeding on behalf of a putative class.

AWG, a Direct Action Plaintiff, is a wholesale grocery distributor. (Second Am. Compl., ECF No. 1437[1] ("SAC"), ¶ 38.) Like other plaintiffs in this MDL, AWG contends that due to price-fixing agreements among Bumble Bee, COSI, and StarKist, it paid inflated prices for certain tuna products. To recover damages, AWG filed a lawsuit on April 30, 2018, in the United States District Court for the District of Kansas against COSI, Bumble Bee, StarKist, their respective parent companies, and Lischewski, Bumble Bee's Chief Executive Officer. (*Assoc. Wholesale Grocers, Inc. v. Bumble Bee Foods et al.*, Case No. 18-cv-02212 (D. Kan.), ECF No. 1 ("Original Compl.").) The action was transferred to this MDL. (ECF No. 1015.) After transfer, AWG filed a first amended complaint, followed by the operative second amended complaint.

Lischewski moved to dismiss the second amended complaint for lack of personal jurisdiction.[2] (*See* ECF No. 1525). Although the motion was granted, AWG was given

---

[1]   An unredacted version of this document is filed at ECF No. 1479.

[2]   By agreement between the parties, Lischewski did not file a response to AWG's action until his motion to dismiss the second amended complaint. (*See, e.g.*, ECF Nos. 1301, 1380.)

leave to refile its claims against Lischewski in a proper forum. (Order (1) Granting Lischewski's Mot. to Dismiss; and (2) Denying as Moot AWG's Mot. to Lift Stay, ECF No. 2306 ("Order"), 11.)

Rather than refile its claims against Lischewski elsewhere and split its action in two, AWG filed a motion for leave to amend jurisdictional allegations. (Mem. of P.&A. in Supp. of AWG's Mot. to File Third Am. Compl. as to Lischewski Only, ECF No. 2412 ("Mot.").) AWG proposes to supplement its complaint with fourteen pages of factual allegations based on the testimony adduced at Lischewski's criminal trial, which concluded December 3, 2019. (*See* Proposed Third Am. Compl., ECF No. 2412-3 ("TAC"); *see also* Lischewski's Resp. to AWG's Mot. to File TAC as to Lischewski Only, ECF No. 2403 ("Opp'n"), 18.) Lischewski opposes granting leave to amend.

## DISCUSSION

### I. Timeliness Under the Scheduling Order

Lischewski initially points to the scheduling order that set July 1, 2017, as the last date in the MDL to add parties without leave of Court. (*See* ECF Nos. 161, 166.) He argues AWG's motion should be denied because it was filed after July 1, 2017. The argument is rejected because Lischewski is not a new party. He has been a named Defendant in AWG's action since the original complaint filed in the District of Kansas. (*See* Original Compl.; First Am. Compl., ECF No. 1339; SAC.)[3] The dismissal on May 26, 2020, on jurisdictional grounds and with leave to re-file (*see* Order 11), does not change this.

Even if the Court were to consider the pending motion as a motion to join a new party, Lischewski's argument has no merit. After the expiration of the date for joinder of

---

[3]   In addition, Lischewski has been an active participant in this MDL since at least the fall of 2017. He has filed numerous briefs, including in MDL member actions other than AWG's action against him (*see, e.g.*, ECF Nos. 717, 755, 832, 844, 854), and appeared at several hearings in this Court.

additional parties, a motion for leave to amend is governed in the first instance by the good cause standard pursuant to Rule 16(b) of the Federal Rules of Civil Procedure.[4]  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).[5]  The primary consideration to determine good cause under Rule 16(b) is diligence of the party seeking amendment.  Motion to join additional parties after the date set in the scheduling order may proceed, if the date "cannot reasonably be met despite the diligence of the party seeking the extension."  *Id.*; *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).  It was impossible for AWG to comply with the scheduling order in the MDL because the last date to join parties was July 1, 2017, before the filing of AWG's original complaint on April 30, 2018.

To the extent Lischewski argues that AWG was subject to the scheduling order as a putative member of the Direct Purchaser Plaintiff class, the argument is unpersuasive.  That class was certified on July 30, 2019 (ECF No. 1931), which was also after the July 1, 2017, deadline.

Finally, Lischewski's comparison of AWG's pending motion to CVS Pharmacy, Inc.'s ("CVS") Motion to Amend the Scheduling Order to Add New Parties (ECF No. 811), which was denied (ECF No. 884 at 8-11), is unavailing.  Unlike CVS, AWG named Lischewski in its original complaint.  (*Cf. CVS Pharm., Inc. v. Bumble Bee Foods, LLC et al.*, Case No. 17cv2154 (S.D. Cal), Compl. for Damages, ECF No. 1.)[6]

## II.  Leave to Amend

Because AWG's proposed amendment is not precluded by the scheduling order, the Court considers its motion under Rule 15(a).  *See Johnson*, 975 F.2d at 607-09.  Rule 15(a)

---

[4]   All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

[5]   Unless otherwise noted, internal quotation marks, citations, ellipses, brackets, and footnotes are omitted.

[6]   The action filed by CVS was made a member of this MDL at ECF No. 544.

advises that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "Courts may decline to grant leave to amend only if there is strong evidence" bearing on the foregoing considerations. *Sonoma Cnty Ass'n of Retired Emp. v. Sonoma Cnty*, 708 F.3d 1109, 1117 (9th Cir. 2013).

AWG contends interests of justice are served by amending its complaint to allow it to pursue its claims against Lischewski together with its claims against other Defendants named in the complaint. If AWG were to re-file its claims against Lischewski in another forum, it would have to split this action in two, resulting in duplication of judicial and party resources. (Mot. 10.) Lischewski counters the motion should be denied based on prejudice, undue delay, and futility.

### A.   Delay

Lischewski contends AWG was dilatory in seeking amendment because the information it seeks to add is not new, *see Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990), and AWG should have been able to obtain sufficient information from Bumble Bee's "nearly 1.2 million-page" document production more than two years ago. (Opp'n 16.)

AWG counters it obtained the facts supporting new allegations from the trial testimony of Walter Scott Cameron, Bumble Bee's Senior Vice President of Sales, and Kenneth Worsham, Bumble Bee's Senior Vice President of Trade Marketing. Even Lischewski admits that "Cameron and Worsham invoked the protection of the Fifth Amendment in most of the questions posed during their depositions" in the MDL (Opp'n

16), whereas they provided extensive testimony in Lischewski's subsequent criminal trial. It was therefore not possible for AWG to obtain the same information from their depositions. Nor, unlike Cameron and Worsham's testimony, did the document discovery provide direct support for the allegations about Lischewski's personal direction of Bumble Bee's negotiation of the anti-competitive agreements with COSI and StarKist, or the application of those agreements to Bumble Bee's customers such as AWG.

Next, Lischewski claims AWG was dilatory because his criminal trial concluded more than seven months before AWG filed the present motion. (Opp'n 16.) Pending before the Court at the conclusion of Lischewski's trial was his own motion to dismiss the second amended complaint for lack of personal jurisdiction. He argues AWG could have "sought to submit supplemental information" to offer the allegations it now requests to add. (*Id.* 16-17.) The Court disagrees. It was not unreasonable for AWG to wait for the Court's ruling before moving to amend.

### B.     *Prejudice*

Lischewski further argues he will be prejudiced if leave to amend is granted. "[T]he consideration of prejudice to the opposing party carries the greatest weight" in determining whether a motion for leave to amend should be granted or denied. *Sonoma Cnty Ass'n of Retired Emp.,* 708 F.3d at 1117. To the extent Lischewski relies on his unsuccessful undue delay arguments to establish prejudice, his claim of prejudice is rejected.

Alternatively, Lischewski contends he will be prejudiced because he "is effectively a new party to the matter" and will have to "conduct discovery from square one" because "years of discovery have already taken place." (Opp'n 17 & 13, respectively.) As discussed in the scheduling order context, Lischewski has been a named Defendant in AWG's complaint since the beginning and is therefore not a new party.

Further, Lischewski's claim that he will have to "conduct discovery from square one" (Opp'n 13; *see also id.* 14, 17) has already been considered and addressed. In September 2018, the DOJ filed a motion to stay discovery between AWG and Lischewski "in light of the parallel, and closely related, criminal action pending" against Lischewski,

and requested the stay to last until conclusion of Lischewski's criminal trial. (U.S. Notice of Mot. and Mot. for Stay of Discovery, ECF No. 1365 ("U.S. Mot."), 3, 8, 10, 11.) In his opposition, as well as in his own motion to stay, Lischewski agreed a stay was necessary, and requested to stay all discovery pertaining to him in all MDL cases.[7] (Order Granting U.S. Mot. to Stay Discovery, ECF 1632 ("Stay Order"), 4; *see also* Lischewski's Opp'n to U.S. Mot., ECF No. 1415 ("Opp'n to U.S. Mot."); Lischewski's Mot. to Stay Discovery Against Him and for a Protective Order, ECF No. 1371). In support of his position, Lischewski made the same argument he makes now. He argued "that the limited stay proposed by the government will force him to begin discovery after the stay is lifted, at which time all other parties, including AWG, will have already finished their discovery," and this would put him at a disadvantage. (Stay Order 9 (citing Opp'n to U.S. Mot. 14).)

The Court considered Lischewski's argument and observed,

> While Mr. Lischewski may face some burdens from beginning discovery after the other parties, he may also benefit from this [because] the completion of the discovery will at least narrow the issues and could streamline any additional discovery needed once the case resumes.

(Stay Order 9.) Taking into account Lischewski's concerns, the Court ordered

> all discovery in *Associated Wholesale Grocers, Inc. v. Bumble Bee Foods, LLC et al.,* Case No. 18-cv-1014-JLS-MDD, pertaining to Defendant Christopher Lischewski **STAYED** pending the resolution of the criminal trial. Discovery in the related MDL cases pertaining to Mr. Lischewski as third-

---

[7] In light of the foregoing, it is disingenuous for Lischewski to contend that "[w]ith AWG's explicit support, DOJ prevented Lischewski from participating in any discovery that has taken place over the past three years." (Opp'n 17.) Moreover, as late as April 2020, after his trial ended, Lischewski opposed lifting the stay, and argued it should continue until his appeal was concluded. (*See* Lischewski's Opp'n to AWG's Mot. to Lift Stay of Discovery, ECF No. 2304.) To the extent Lischewski now complains of delay resulting from the stay, he is estopped, as he previously advocated a stay when he thought it would benefit his interests. For this reason, *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir. 1999), and *Solomon v. North American Life and Casualty Insurance Co.,* 151 F.3d 1132, 1138-39 (9th Cir. 1998) (*see* Opp'n 13), are distinguishable.

> party may proceed. The Court prohibits AWG from participating in or receiving any discovery against Mr. Lischewski as a third-party in the remaining MDL cases while the stay is in place.

(Stay Order 13; *see also id.* 9 (equalizing the playing field as between AWG and Lischewski.)

Accordingly, Lischewski's complaints of prejudice from delay in discovery have already been addressed in the Stay Order. He presents no reason why the measures included to protect his interests are inadequate.

Finally, Lischewski makes three arguments why he should not be made a party to AWG's complaint at all. First, he argues he "will have to begin anew regardless of whether he is joined in this suit or a new suit against [him] in a proper forum." (Opp'n 15.) Second, he is serving a 40-month sentence in federal custody, and "will be effectively barred from meaningfully participating in his defense" particularly because of restrictions imposed due to the COVID-19 pandemic. (*Id.* at 13-14, 15, 17.) Third, there is no reason for AWG to sue him, because AWG can obtain full recovery from other named Defendants, it can obtain discovery from Lischewski using third-party process and subpoenas, and he is already paying his debt to society because he is incarcerated.[8] (*Id.* at 15-16.) These arguments suggest Lischewski would be equally prejudiced by defending this action in *any* forum. Denying AWG's motion based on any of them would immunize Lischewski from civil liability. His prejudice arguments are rejected.

### C. Futility

Finally, Lischewski contends AWG's motion for leave to amend should be denied as futile because, even if the proposed amendment is allowed, AWG cannot allege personal jurisdiction against him. Since the beginning, AWG has alleged that COSI and its parent company Thai Union Group PCL, StarKist, and its parent companies Dongwon Industries

---

[8] Lischewski has appealed his conviction. (*United States v. Lischewski*, No. 20-10211 (9th Cir.).)

Co. Ltd. and Del Monte Corporation, and Bumble Bee, its CEO Lischewski, and its parent companies Lion Capital LLP, Lion Capital (Americas) Inc., and Big Catch Cayman L.P. violated federal and Kansas antitrust laws by entering into a price-fixing conspiracy. Only Lischewski has objected to personal jurisdiction.

AWG's action was transferred to this District for pretrial proceedings only. *See* 28 U.S.C. § 1407(a). (Transfer Order, ECF No. 1, 2; Conditional Transfer Order, ECF No. 1015.) Because AWG's action was filed in the District of Kansas, it will be remanded there "at or before the conclusion of such pretrial proceedings . . . unless it shall have been previously terminated." 28 U.S.C. § 1407(a). This Court has the jurisdiction and powers the transferor district would have in the absence of transfer. *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976). The Court therefore considers whether there is personal jurisdiction over Lischewski in Kansas.[9]

AWG is a Kansas corporation with its principal place of business in Kansas. (TAC ¶ 38.) From its Kansas headquarters, AWG purchased millions of dollars' worth of shelf-stable tuna directly from Bumble Bee. (*Id.* ¶ 38-40, 136.) At the relevant time, Bumble Bee was a Delaware limited liability company with its principal place of business in San Diego, California. (*Id.* ¶42.) Bumble Bee sold shelf-stable tuna throughout the United States. (*Id.*) It engaged in advertising campaigns, including in Kansas, to induce increased sales of its tuna products. (*Id.* ¶ 133.) Lischewski was Bumble Bee's CEO during the period of the alleged conspiracy. (*See* TAC ¶¶ 3, 131, 317.) His office was in San Diego, California. (*Id.* ¶ 78, 110.) During the relevant time, he was a San Diego resident. (*Id.* ¶63.)

---

[9] Lischewski opposes personal jurisdiction only in the District of Kansas and, prior to his incarceration has not contended that he would be prejudiced by having to defend himself in pretrial proceedings in this District. (*See generally* Lischewski's Mem. of P.&A. in Supp. of Mot. to Dismiss AWG's SAC, ECF No. 1525-1.)

Lischewski claims AWG cannot allege personal jurisdiction in Kansas because he never lived, owned property, sold or purchased goods in, or traveled to, Kansas. (Opp'n 5.) He also says he "never directed specific conduct in Kansas." (*Id.*) He claims that "AWG's desire to drag [him] into litigation in Kansas – a state with which he has no connection – violates [his] due process rights and serves no understandable purpose." (*Id.* at 16.)

Through service of process, a federal court may exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located." Fed. R. Civ. Proc. 4(k)(1)(A). The Kansas long-arm statute allows personal jurisdiction to the full extent permitted by due process. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998). Accordingly, the only limitation to personal jurisdiction is provided by due process. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014).

"Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont. Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017)[10] (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), and *Int'l Shoe Co. v. Wash. Off. Unempl. Comp. & Placement*, 326 U.S. 310, 320 (1945)). The primary focus of personal jurisdiction inquiry is the defendant's relationship with the forum state. *Bristol-Myers Squibb Co. v. Super. Ct. Cal.*, 137 S.Ct. 1773, 1779 (2017); *Walden*, 571 U.S. at 285.

There are two types of personal jurisdiction – general and specific. *Bristol-Myers*, 137 S.Ct. at 1779-80. AWG seeks to allege specific jurisdiction over Lischewski.

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the] "fair warning requirement" [of due process] is satisfied if the defendant has "purposefully

---

[10] Both parties make their arguments based on Tenth Circuit law.

> directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Burger King*, 471 U.S. at 472-73; *see also Old Republic*, 877 F.3d at 904.

"The purposeful direction requirement 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Old Republic*, 877 F.3d at 904-05 (quoting *Burger King*, 471 U.S. at 475). Three "frameworks" have been articulated

> for determining whether an out-of-state defendant's activities satisfy the purposeful direction requirement: (1) continuing relationship with forum state residents ("continuing relationships"); (2) deliberate exploitation of the forum state market ("market exploitation"); and (3) harmful effects in the forum state ("harmful effects").

*Old Republic*, 877 F.3d at 905.

Lischewski's motion to dismiss was granted because AWG failed sufficiently to allege Lischewski had purposefully directed his activities at Kansas under the harmful effects framework.[11] (Order 11.) By contrast, in its pending motion AWG argues its proposed amendment is sufficient to allege Lischewski's purposeful direction under all three alternative frameworks. (*See* Mot. 6-10.) Lischewski counters only that AWG's proposed amendment is futile under the harmful effects framework and does not address the other two. (*See* Opp'n 18-21.) Accordingly, Lischewski has waived any argument that AWG's proposed amendment is futile for failure to allege purposeful direction under the market exploitation or continuing relationships framework. *See* S.D. Cal. Civ. R. 7.1(f)(3)(a).

Upon consideration of AWG's proposed amendment, the Court finds it is not futile. AWG alleges that from 2002 through 2017, including the alleged conspiracy period, AWG made 8,400 discrete purchases of packaged tuna products from Bumble Bee in Kansas,

---

[11] At that time, the parties agreed that harmful effects was the applicable framework. (*See* Order 5.)

amounting to approximately $15 million in purchases. (TAC ¶ 131.) Almost $10 million in purchases were made from September 2008 to December 2017. (*Id.* ¶ 129.) Bumble Bee packaged tuna was widely sold at other retail outlets in Kansas as well, including Walmart and Target. (*Id.* ¶ 132.) From 2011 to 2015 alone, other Kansas customers made more than $ 4 million in tuna purchases from Bumble Bee. (*Id.*)

On December 3, 2019, Lischewski was found guilty of participating in the price-fixing conspiracy among Bumble Bee, COSI, and StarKist. The sentencing court found "that [Lischewski] held a leadership role in the conspiracy." (*United States v. Lischewski*, No. 18cr203 (N.D. Cal. Jun. 16, 2020), ECF No. 692, Am. Crim. Minutes of Jun. 16, 2020 sentencing.)

AWG alleges Lischewski was a direct participant and moving force behind the conspiracy on behalf of Bumble Bee and used price-fixing agreements to meet Bumble Bee's budgeted performance standards. (TAC ¶¶ 64, 65, 140.) Further, on behalf of Bumble Bee, he personally directed and supervised the marketing, advertising, distribution, and sale of the price-fixed tuna products to Bumble Bee's customers. (*Id.* ¶64.) He knew these products would be widely sold in Kansas. (*Id.* 109).

According to AWG's allegations, Lischewski was a "hands-on manager" with direct participation in the price negotiations with Bumble Bee's competitors and customers. (TAC ¶¶ 78, 73.) He personally instructed Bumble Bee's executives Cameron and Worsham to engage in price-fixing agreements with competitors to arrive at list prices and promotional pricing levels of the relevant tuna products. (*Id.* ¶¶ 75, 78, 95, 122.) Lischewski had "final say and approval" over list prices and promotional pricing guidance, which were set in accordance with those agreements. (*Id.* ¶¶ 90, 135.) He used spreadsheets to monitor how the agreements translated to customer pricing. (*Id.* ¶ 78, 83; *see also id.* ¶124.) The spreadsheets contained specific customer targets, including targets for Bumble Bee's Kansas customers. (*Id.* ¶¶ 78, 107.)

Every year throughout the conspiracy, Lischewski personally instructed Cameron and Worsham to offer discounts and promotions to customers. (TAC ¶¶ 76, 88; *see also*

*id.* ¶ 72.)  The list prices and promotional prices, as agreed among competitors and approved by Lischewski, formed the basis for customer price negotiations, and set the parameters for specific customer-negotiated discounts.  (*Id.*¶¶ 135, 141.)

At Lischewski's direction, Bumble Bee's sales department reached out directly to customers in Kansas by sending them price lists, promotional offers, and bulletins with false reasons for price increases in order to increase the sale of Bumble Bee's tuna at unlawfully inflated prices.  (TAC ¶¶ 81, 82, 84, 105-06, 105-08, 117.)  Bumble Bee regularly submitted its promotional proposals directly to AWG and communicated directly with AWG about pricing and orders.  (*Id.* ¶ 134.)

Lischewski personally directed his sales department in price negotiations with individual customers.  (TAC ¶¶ 77, 85, 91-93, 128; *see also id.* ¶¶ 127, 141.)  Customer negotiations were tailored, resulting in different pricing in each market depending on each customer's individual ability to resist the unlawfully inflated prices.  (*Id.* ¶¶ 86, 87.)  This resulted in actual contracts between Bumble Bee and its customers, including AWG, Walmart, Target, and others in Kansas, whereby Bumble Bee charged them supracompetitive prices for packaged tuna products.  (*Id.* ¶¶ 79, 109, 117, 121, 125.)  AWG purchased packaged tuna products directly from Bumble Bee, and Bumble Bee sent invoices directly to AWG.  (*Id.* ¶¶ 136-37, 38-40.)

As alleged by AWG, over a span of at least fifteen years Bumble Bee regularly and continuously conducted business with AWG and Bumble Bee's other Kansas customers by entering into countless sale transactions.  "In cases involving contractual contacts between the defendant and forum state residents, the purposeful direction analysis often employs the [continuing relationships] framework."  *Old Republic,* 877 F.3d at 905.  In this regard, courts look to the "parties' actual course of dealing," including "prior negotiations and contemplated future consequences, along with the terms of the contract."  *Id.* at 913 (quoting *Burger King,* 471 U.S. at 479).  Also relevant are the "out-of-state defendant's solicitations of or direct communications with forum state residents."  *Old Republic,* 877 F.3d at 905.

It is beyond dispute that AWG has alleged personal jurisdiction over Bumble Bee under the continuing relationships framework.[12]

However, jurisdiction over Bumble Bee is not by itself enough to assert jurisdiction over Lischewski as Bumble Bee's CEO. *See Keeton v. Hustler Mag.*, 465 U.S. 770, 781 n.13 (1984). Employees' contacts with the forum "are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

In assessing an employee's contacts on behalf of the employer, it matters if the employee was a "primary participant" in the employer's activities in the forum:

> As the Supreme Court held in *Calder v. Jones*, employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation.

*In re Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir. 1996) (citing *Calder*, 465 U.S. at 790); *see also* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1069.4 & n.34 (4th ed. 2020).

For example, in *In Re Application to Enforce Administrative Subpoenas*, the United States Securities and Exchange Commission ("SEC") served respondent Knowles with administrative subpoenas relative to a bribery investigation into two Bahamian companies, and obtained an order to enforce them. 87 F.3d at 414-15. Knowles, who was the president of both companies and resided in the Bahamas, objected to personal jurisdiction based on

/ / /

---

[12] AWG has also alleged personal jurisdiction over Bumble Bee under the market exploitation framework. *See Old Republic,* 877 F.3d at 905-06 ("out-of-state defendant's continuous and deliberate exploitation of the forum state market") (citing *Keeton*, 465 U.S. at 781).

lack of minimum contacts with the United States,[13] and argued, as Lischewski does here (Opp'n 21), that the corporations' contacts could not be imputed on him. *See id.* at 415, 418.

Knowles had taken several actions in the United States on behalf of the corporations, including meeting with investment clients and the corporations' sole shareholder, signing checks and letters, and opening a brokerage account. *Admin. Subpoenas*, 87 F.3d at 417, 419. He argued that "the contacts of the two corporations cannot be factored into the analysis of whether he has minimum contacts with the United States," and contended "that the jurisdiction of the district court based upon these corporate contacts does not extend to him." *Id.* at 418.

In rejecting these arguments, the court reasoned that Knowles was the "primary participant" in the corporations' activities in the United States, and "purposefully directed his activities on behalf of the [corporations] toward the United States." *Admin. Subpoenas*, 87 F.3d at 418. The court found the activities "involve[d] an ongoing business relationship and a brokerage account." *Id.* at 418-19. These activities "were not random, fortuitous, or attenuated," but "purposeful, continuous, and systematic." *Id.* at 419. "[T]hey represented a deliberate affiliation with the forum." *Id.* at 419. "From these contacts, Knowles and the two corporations enjoyed the privileges of conducting activities within the [forum] and he could reasonably anticipate being subject to the jurisdiction [in the forum] . . . at least as to those specific contacts." *Id.*

The court concluded that Knowles' actions on behalf of the corporations constitute minimum contacts in support of personal jurisdiction over him. *Admin. Subpoenas*, 87

///

---

[13] Because personal jurisdiction was "invoked based upon a federal statute providing for nationwide or worldwide service [15 U.S.C. § 77v(a)], the relevant inquiry [was] whether [Knowles] had sufficient minimum contacts with the United States" rather than a single State. *Admin. Subpoenas*, 87 F.3d at 417.

F.3d at 418. It found "jurisdiction over him with regard to the corporate activities in which Knowles was a primary participant." *Id.*

Lischewski's employer Bumble Bee is subject to personal jurisdiction in Kansas based on continuing relationships with Kansas customers, which relationships are alleged to be tainted by unlawful price-fixing. The sentencing Judge found, and AWG alleges, that Lischewski was Bumble Bee's primary participant in the price-fixing conspiracy. AWG's proposed amendment describes in detail Lischewski's purposeful and continuous hands-on direction of negotiations and related communications to make sales based on the price-fixing agreements spanning a period of approximately fifteen years and covering thousands of sale transactions with AWG and other Kansas customers, to enhance Bumble Bee's bottom line. This is sufficient to allege that Lischewski purposefully established minimum contacts in Kansas on behalf of Bumble Bee, *see Burger King*, 471 U.S. at 472-73, 474, thus subjecting himself to personal jurisdiction there, *see Admin. Subpoenas,* 87 F.3d at 418-19.

Lischewski also opposes AWG's motion in part based on the contention that AWG has not alleged that he had "directed specific conduct in Kansas." (Opp'n 5.) This contention is refuted by the allegations in the proposed amendment.

Lischewski further opposes based on his lack of physical presence in Kansas. (Opp'n 5.) Physical presence is not required under the circumstances alleged by AWG:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State . . . it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476; *see also Walden*, 571 U.S. at 283, 285.

Finally, Lischewski contends that the proposed amendment is futile because it does not allege the conspiracy was focused on, or expressly aimed at, Kansas to the exclusion

of Bumble Bee's other markets in the United States, or that the brunt of the alleged injuries occurred in Kansas. (*See* Opp'n 19-20.) These considerations are necessary to establish purposeful direction under the harmful effects framework, *see Walden*, 571 U.S. at 286-88 (discussing *Calder*); *Old Republic*, 877 F.3d at 907 (same). Harmful effects was the only framework addressed in Lischewski's opposition. To establish purposeful direction under the continuing relationships framework, a defendant is not required to expressly aim his or her activities exclusively at the forum or cause the brunt of the injury to be suffered in the forum. *Cf. Walden,* 571 U.S. at 285-86 (discussing *Burger King*); *Old Republic*, 877 F.3d at 905 (same).

Because AWG's proposed amendment sufficiently alleges Lischewski's purposeful direction under the continuing relationships framework, the Court need not consider whether he can also allege purposeful direction under the market exploitation or harmful effects frameworks. The Court rejects Lischewski's argument that AWG's amendment would be futile because it does not allege that he had purposefully established minimum contacts in Kansas.

Finally, Lischewski contends "it would offend notions of fair play and substantial justice to require [him] to defend himself in Kansas." (Opp'n 17.)

> Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." . . . [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Burger King*, 471 U.S. at 476-77. Far from presenting a compelling case, Lischewski offers only the conclusory statement quoted above. To the extent he also intended to rely on his previously-discussed protestations of prejudice to argue personal jurisdiction in Kansas would offend traditional notions of fair play and substantial justice, his arguments are not compelling, as they would immunize him from jurisdiction in any forum at all.

**CONCLUSION**

AWG's motion for leave to amend is granted.  No later than seven (7) calendar days from the filing of this order, AWG shall file its proposed third amended complaint (ECF No. 2412-2),[14] if any.  Lischewski shall file a response, if any, no later than the time provided by Rule 15(a)(3).

**IT IS SO ORDERED.**

Dated:  March 1, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[14]  Because motion to seal has been denied (ECF No. 2410), AWG shall remove the notation of filing under seal.